UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:18-cr-00098-JAW-06 |
| | ) | |
| MALCOLM GREENLAW | ) | |

**ORDER ON SECOND MOTION FOR COMPASSIONATE RELEASE**

Six months ago, the Court denied an inmate's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The inmate again moves for compassionate release, claiming changed circumstances warrant his early release. While the Court concludes that the inmate's medical conditions may heighten his risk of complications from COVID-19, the seriousness of his offense, the likelihood he will reoffend and the need for the sentence served to fulfill the sentence imposed continue to preclude his release. The Court dismisses the motion without prejudice.

**I.  PROCEDURAL BACKGROUND**[1]

On July 29, 2019, the Court sentenced Malcolm Greenlaw to forty-eight months of imprisonment, three years of supervised release, no fine, and a $100 special assessment for conspiracy to distribute and to possess with intent to distribute controlled substances, including heroin and crack cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1). *Min. Entry* (ECF No. 300); *Am. J.* (ECF No. 306).

---

[1]  In this order, the Court provides only the relevant procedural background. An exhaustive account of the factual background, including Mr. Greenlaw's history and characteristics, his criminal history, and the offense conduct, can be found in the Court's October 2, 2020 order dismissing Mr. Greenlaw's first motion for compassionate release. *See Order on Mot. for Compassionate Release* at 11-18 (ECF No. 397).

On July 20, 2020, Mr. Greenlaw filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). *Def.'s Mot. for Compassionate Release* (ECF No. 368) (*Def.'s First Mot.*). On October 2, 2020, the Court denied Mr. Greenlaw's motion, concluding that despite his serious medical conditions, "the likelihood that he will reoffend, along with the short amount of time he has served, the need for rehabilitation, and principles of just punishment and deterrence, caution against release." *Order on Mot. for Compassionate Release* at 1 (ECF No. 397) (*Order Dismissing Def.'s First Mot.*).

On November 30, 2020, Mr. Greenlaw filed pro se a second motion for compassionate release. *Def.'s Second Mot. for Compassionate Release* (ECF No. 399). On December 8, 2020, the Court ordered Mr. Greenlaw to show cause as to why the Court should not dismiss his motion for compassionate release for failure to satisfy the exhaustion requirement. *Order to Show Cause* (ECF No. 400). On December 28, 2020, Mr. Greenlaw responded, *Resp. to Order to Show Cause* (ECF No. 401), and the same day the Court accepted Mr. Greenlaw's representations that he exhausted his administrative remedies for purposes of filing his second motion for compassionate release. *Order* (ECF No. 402).

On December 29, 2020, the Court appointed counsel to represent Mr. Greenlaw in his compassionate release motion, *Appointment of Counsel & Scheduling Order* (ECF No. 405). On January 19, 2021, after several extensions of time, Mr. Greenlaw filed an amended second motion for compassionate release. *Am. Pet. for Compassionate Release* (ECF No. 411) (*Def.'s Am. Second Mot.*). On February 4, 2021,

the Government responded in opposition. *Opp'n to Def.'s Second Mot. for Compassionate Release re: First Step Act* (ECF No. 415) (*Gov't's Opp'n*).

On March 9, 2021, the Government filed a notice, informing the Court that Mr. Greenlaw "refused to have administered to him the Moderna-manufactured COVID-19 vaccine." *Gov't Notice/Correspondence Regarding Def.'s Refusal of COVID-19 Vaccination* at 1 (ECF No. 417) (*Vaccine Refusal Notice*). Mr. Greenlaw replied on March 19, 2021, contending that his refusal to take the Moderna vaccine "does not [a]ffect the Court's analysis." *Def.'s Reply to Gov't's Suppl. Correspondence* (ECF No. 420) (*Def.'s Resp. to Vaccine Refusal Notice*).

## II.   THE PARTIES' POSITIONS

### A.   Malcolm Greenlaw's Motion

Mr. Greenlaw incorporates the allegations in his first and second motions for compassionate release, and again moves the Court for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). *Def.'s Am. Second Mot.* at 1. Mr. Greenlaw recounts the procedural history and facts, noting that the Court already determined that he exhausted his administrative remedies. *Id.* at 1-4. He then turns to the merits, first arguing that his type-2 diabetes "places him at high risk of death from COVID-19 and are compelling and extraordinary circumstances." *Id.* at 6. He states that "COVID-19 is rampant inside [his] prison" but notes that COVID-19 "does not need to be rampant or prevalent in a prison to be considered a factor in granting compassionate release." *Id.* at 8-9. He asserts that if released he would live with his

3

brother in Lebanon, Maine, where the risk from COVID-19 is "significantly lower" than at FCI Allenwood. *Id*. at 10.

Mr. Greenlaw next argues that the "applicable sentencing factors support reducing [his] sentence for early release." *Id*. at 11. He states that he has "served approximately 31 months of the 48 month sentence" and with good time, he is "approximately 10 months shy of release." *Id*. He also contends that his "conviction involves a non-violent drug offense, and his early release will not pose a danger to society." *Id*. He asserts that he "stopped his involvement in the conspiracy nearly two years before his arrest," "severed all ties with any members of the conspiracy, including his estranged wife, Samantha Johnson," and "is nearly 5 years removed from the conspiracy and criminal activity." *Id*. at 12. He claims he is "now several years removed from his substance taking, has engaged in treatment since being arrested, and will continue with treatment on supervised release." *Id*. Finally, he argues that his "longstanding sobriety while incarcerated, treatment, and available treatment through supervised release all greatly diminish the likelihood he will reoffend if released early," and contends that early release does not lessen the deterrent effect or pose a risk to the community. *Id*. at 13.

### B. The Government's Opposition

The Government "concedes that [Mr. Greenlaw] has exhausted the administrative remedies" and "further recognizes that [his] diagnosis of Type 2 diabetes mellitus continues to qualify as 'extraordinary and compelling,'" but "opposes [his] request for the reasons stated by the Court in its Order—which apply

4

with equal force today—as [he] has failed to demonstrate that his circumstances have changed in such a way that his release should be granted." *Gov't's Opp'n* at 1-2. The Government provides background, noting that Mr. Greenlaw's "projected release date, accounting for earned and projected good time credit, is December 17, 2021." *Id.* at 3. The Government also reports that FCI Allenwood Medium has only two inmates and thirty-three staff who tested positive for COVID-19. *Id.* at 4. Finally, the Government claims that on January 27, 2021, FCI Allenwood's Residential Drug Abuse Program resumed and Mr. Greenlaw is "an active participant" and "is currently in phase 2 of 3 of the 500-hour program." *Id.* at 5.

The Government agrees that Mr. Greenlaw has exhausted his administrative remedies and turns to the merits of his motion, conceding that type-2 diabetes is an "extraordinary and compelling reason" warranting release, but argues the Court should deny Mr. Greenlaw's motion. *Id.* at 5, 7. First, the Government contends that Mr. Greenlaw still poses a "significant danger to the safety of the community." *Id.* at 8. It argues the drug trafficking offense is "serious" and Mr. Greenlaw "diminishes the seriousness of that crime" by seeking early release. *Id.* The Government states that he "offers little in the way of specifics about how he plans to avoid recidivating, other than participating in supervised release," and asserts that he "still has approximately 6 months to go before he completes the Residential Drug Abuse Program." *Id.*

The Government further argues that the § 3553(a) factors weigh against release. *Id.* at 9. It contends that Mr. Greenlaw's sentence was necessary and the

5

requested reduction would neither "promote respect for the law," nor "provide just punishment," nor "afford adequate deterrence." *Id.* It claims that Mr. Greenlaw's "completion of the Residential Drug Abuse Program prior to release will promote available 'correctional treatment in the most effective manner.'" *Id.* at 9-10 (quoting 18 U.S.C. § 3553(a)(2)(D)).

## III. LEGAL STANDARD

Over the course of the COVID-19 pandemic, the Court addressed the legal standard for deciding a motion for compassionate release on several occasions. *See, e.g., United States v. Crosby*, 1:17-cr-00123-JAW-01, 2020 U.S. Dist. LEXIS 199085, at *16-23 (D. Me. Oct. 27, 2020). Put succinctly, 18 U.S.C. § 3582(c)(1)(A)(i) permits a court to modify a term of imprisonment when (1) "extraordinary and compelling reasons warrant" the movant's release, (2) release is consistent with "the factors set forth in [18 U.S.C. §] 3553(a)," and (3) release comports with "applicable policy statements issued by the Sentencing Commission . . . ." 18 U.S.C. § 3582(c)(1)(A).[2]

---

[2] Section 1B1.13 of the United States Sentencing Commission Guidelines addresses reductions in the terms of imprisonment under 18 U.S.C. § 3582(c)(1)(A). But the Commission promulgated these provisions before Congress enacted the First Step Act. *See United States v. Brooker*, 976 F.3d 228, 230-34 (2d Cir. 2020) (discussing the history of § 1B1.13 and the First Step Act). As Judge Hornby of this District noted, the "Second, Fourth, Sixth and Seventh Circuits have . . . ruled that the Guideline policy statement applies only to motions brought by the Director of the Bureau of Prisons, not to motions for relief brought by defendants, and nothing limits judges' discretion in considering 'the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.'" *United States v. Almeida*, Nos. 2:17-cr-52-DBH-01, 2:11-cr-127-DBH-01, 2021 U.S. Dist. LEXIS 364, at *4 (D. Me. Jan. 4, 2021) (quoting *Brooker*, 976 F.3d at 235-37 and citing *United States v. McCoy*, 981 F.3d 271, 281-83 (4th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1108-11 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)); *see United States v. Gowdy*, 832 F. App'x 325, 327 (5th Cir. 2020) (describing whether § 1B1.13 applies to motions for compassionate release as an "open question"); *United States v. Pelloquin*, No. 20-12818-DD, 2020 U.S. App. LEXIS 39966, at *4 (11th Cir. Dec. 21, 2020) (characterizing the issue as "not frivolous").

The United States Sentencing Commission issued a policy statement under United States Sentencing Guideline § 1B1.13 for addressing compassionate release motions under § 3582(c)(1)(A).[3] This policy statement requires that the movant must meet the "requirements of subdivision (2)," which provides that a court must determine that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1 (U.S. SENTENCING COMM'N 2018) (U.S.S.G). Section 3142(g) sets forth four factors that a court must consider before releasing a person pending trial. They include: (1) the nature and circumstances of the offense, specifically whether the crime is a crime of violence or involves a controlled substance; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

The policy statement also provides criteria for determining whether "extraordinary and compelling reasons" exist to release the defendant. U.S.S.G. § 1B1.13 cmt. n.1. These reasons include certain enumerated terminal illnesses and similar conditions, physical, functional, mental, or cognitive impairments, age, family

---

[3] As the Court has previously discussed, "[t]he Sentencing Commission promulgated this policy statement before the emergence of the COVID-19 pandemic and before the changes to § 3582 put in place by the FIRST STEP Act; its provisions are therefore not directly related to the unique circumstances presented by a global pandemic. Nevertheless, the Court finds the policy provisions are a useful starting point for its analysis of the compassionate release motion." *Crosby*, 2020 U.S. Dist. LEXIS 199085, at *20 n.1. Similarly, Judge Hornby of this district has ruled that this policy statement "'provides helpful guidance' but 'is not ultimately conclusive given the statutory change.'" *United States v. Rembert*, No. 2:12-CR-66-DBH, 2020 U.S. Dist. LEXIS 210841, at *1 (D. Me. Nov. 11, 2020) (quoting *United States v. Fox*, No. 2:14-cr-03-DBH, 2019 U.S. Dist. LEXIS 115388, at *5 (D. Me. July 11, 2019), *aff'd*, No. 19-1785 (1st Cir. July 23, 2020)). The Court agrees.

circumstances, and other unenumerated reasons. *Id.* § 1B1.13 cmt. n.1 (A-D). The policy statement further provides that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." *Id.* § 1B1.13 cmt. n.2. Finally, it states that "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." *Id.* § 1B1.13 cmt. n.3.

The movant bears the burden of proving that he is entitled to a sentence reduction, and "the Court has broad discretion in deciding whether to grant or deny a motion for sentence reduction." *United States v. Curtis*, No. 1:14-cr-00140-JAW, 2020 U.S. Dist. LEXIS 102045, at *12 (D. Me. June 11, 2020) (quoting *United States v. Britton*, 473 F. Supp. 3d 14, 16 (D.N.H. 2020) (internal citations omitted)).

## IV. DISCUSSION[4]

The present motion is Mr. Greenlaw's second motion for compassionate release. Just six months ago the Court denied Mr. Greenlaw's first motion for compassionate release after an exhaustive review of his history and characteristics, criminal history, and the nature and circumstances of his offenses. *Order Dismissing Def.'s First Mot.* at 11-18. Pursuant to 18 U.S.C. § 3582(c)(1)(A), the Court considered whether Mr. Greenlaw was a danger to the community, whether the 18 U.S.C. § 3553(a) factors favored release, and whether his medical conditions, coupled with

---

[4] 18 U.S.C. § 3582(c)(1)(A) contains a mandatory claim processing rule, which bars some compassionate release motions as untimely. *See Crosby*, 2020 U.S. Dist. LEXIS 199085, at *17 (citing *United States v. Lugo*, No. 2:19-cr-00056-JAW, 2020 U.S. Dist. LEXIS 63673, at *3 (D. Me. Apr. 10, 2020)). On December 28, 2020, the Court "accept[ed] [Mr. Greenlaw's] representations that he has exhausted his administrative remedies for purposes of filing his second motion for compassionate release." *Order* (ECF No. 402). Consistent with that order, the Court concludes Mr. Greenlaw exhausted his administrative remedies and addresses the merits of his motion.

the COVID-19 pandemic, constituted "extraordinary and compelling reasons" warranting release. *Id.* at 19-32. After full consideration, the Court concluded that while "Mr. Greenlaw's medical conditions and the inherent danger of being incarcerated in BOP facilities at this time present a serious case for compassionate release," the Court "is unable to release Mr. Greenlaw because it finds he poses a risk to the community and completion of his sentence is necessary to allow him to fully benefit from his drug rehabilitation program." *Id.* at 32. The question now is whether the circumstances have sufficiently changed since the Court's October 2, 2020 order to warrant compassionate release.

After review of Mr. Greenlaw's new motion for compassionate release, the Court has identified four ways in which the circumstances have changed since the Court's October 2, 2020 dismissal of his first motion: (1) new COVID-19 statistics from FCI Allenwood Medium, (2) resumption of the Residential Drug Abuse Program (RDAP), (3) a greater percentage of sentence served, and (4) his refusal of the COVID-19 vaccine. After addressing each of these new circumstances, the Court concludes that even though Mr. Greenlaw's medical conditions may heighten his risk of complications from COVID-19, the seriousness of his offense, the likelihood he will reoffend, and the need for the sentence served to fulfill the sentence imposed continue to preclude his release.

  A. **COVID-19 at FCI Allenwood Medium**

When the Court denied Mr. Greenlaw's first motion, it found there were 1,022 total inmates at FCI Allenwood Medium. *Order Dismissing Def.'s First Mot.* at 28.

It further found that twenty-seven inmates and six staff had tested positive for COVID-19. *Id.* at 28-29. As of today, there are 1,147 total inmates at FCI Allenwood Medium. *FCI Allenwood Medium*, BOP, https://www.bop.gov/locations/institutions/alm/ (last visited Apr. 6, 2021). FCI Allenwood Medium reports one positive inmate and no positive staff. *COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Apr. 6, 2021). No inmates have died, and five hundred thirty-six inmates and forty-nine staff have recovered. *Id.* These statistics strongly suggest that FCI Allenwood Medium is safer now than when the Court denied Mr. Greenlaw's motion in October 2020. While it appears the facility experienced a COVID-19 outbreak sometime since the Court's last order, the current statistics show only one positive inmate.

Furthermore, the vaccination numbers from FCI Allenwood Medium are encouraging. The BOP reports that FCC Allenwood has fully vaccinated three hundred eighty-eight staff and nine hundred seventy-four inmates. *COVID-19 Vaccine Implementation*, BOP, https://www.bop.gov/coronavirus/ (last visited Apr. 6, 2021).[5] Considering only one inmate and no staff at FCI Allenwood Medium are currently positive and given the encouraging vaccination numbers, the Court finds that Mr. Greenlaw is at a lower risk of contracting COVID-19 now than when the Court denied his first motion in October 2020.

---

[5] The current percentage of fully vaccinated people in the state of Maine is 28.17%. *See* https://maine.gov/covid19/vaccines/dashboard (last visited Apr. 6, 2021). Based on the inoculation numbers at FCI Allenwood, the percentage of vaccinated inmates and staff at FCI Allenwood may be higher than the percentage of vaccinated people in Maine and nationally. As the Court has observed, however, the opportunity for an inmate to protect himself or herself from infection when out of prison is much greater than the opportunity to do so while incarcerated.

### B.   Resumption of the Residential Drug Abuse Program

In denying Mr. Greenlaw's first motion, the Court noted that Mr. Greenlaw had an admittedly "long history of drug addiction" and the Court was "chary about releasing him without his obtaining a greater understanding of his addictions, the causes of his addictive behavior, and the tools to avoid falling back into his old pattern of substance abuse and criminality." *Order Dismissing Def.'s First Mot.* at 20, 23. The Court considered that he had only completed phase one of three of RDAP and was "extremely concerned that if Mr. Greenlaw does not obtain an intensive course of drug and alcohol therapy, he will recidivate." *Id.* at 23. Citing *Tapia v. United States*, 564 U.S. 319 (2011), the Court was careful to note that Mr. Greenlaw's participation in RDAP was not a valid reason, standing alone, to deny his motion for compassionate release, and considered RDAP "as one factor along with others in ruling on Mr. Greenlaw's motion." *Id.* at 22.

Mr. Greenlaw argues that as of "the November 30, 2020 filing, the RDAP program [h]as been suspended at Allenwood." *Def.'s Am. Second Mot.* at 4. He claims his "longstanding sobriety while incarcerated, treatment, and available treatment through supervised release all greatly diminish the likelihood he will reoffend if released early." *Id.* at 13. The Government contends that "on January 27, 2021, modified [RDAP] operations resumed, following the unit's reopening after inmates cleared the necessary COVID-19 testing protocols" and Mr. Greenlaw is currently an "active participant" in "phase 2 of 3 of the 500-hour program." *Gov't's Resp.* at 5

11

(citing *id.*, Attach. 2, *Decl. of BOP FCI Allenwood Case Manager John Ivory* (*Ivory Decl.*)).

The Court continues to hold the view that completion of RDAP could prove enormously beneficial to Mr. Greenlaw's post-release prospects. The Court commends Mr. Greenlaw's active participation in the program and encourages him to continue. However, he is only in phase two of three with a tentative completion date of August 9, 2021. *Ivory Decl.* ¶¶ 5-6. While he has moved from phase one to phase two of the three-phase program, the circumstances have not sufficiently changed so as to alter the Court's determination regarding Mr. Greenlaw's risk of recidivism and danger to the community.

    **C.**    **Amount of Time Served**

The Court dismissed Mr. Greenlaw's first motion in part because of "the short amount of time he has served." *Order Dismissing Def.'s First Mot.* at 1. It has been six months since the Court dismissed Mr. Greenlaw's motion for compassionate release, the obvious consequence being that Mr. Greenlaw has now served six more months of his forty-eight-month sentence. Mr. Greenlaw has a projected release date of December 17, 2021. By the Court's calculation, he has served about 67% of his full term and 79% of his projected statutory term. Despite the greater percentage of sentence served, the Court believes that the need for the sentence served to fulfill the sentence imposed continues to preclude his release.

### D.     Vaccine Refusal

Since the Court's October 2020 order, on February 20, 2021, Mr. Greenlaw was offered the Moderna-manufactured COVID-19 vaccine but refused it. *Vaccine Refusal Notice* at 1. The Government asks the Court to consider this fact as relevant to Mr. Greenlaw's present motion. *Id.* Mr. Greenlaw does not dispute that he refused the vaccine. *Def.'s Resp. to Vaccine Refusal Notice* at 2. He claims he "refused the vaccine out of concern of its limited data on safety" and contends his decision "does not [a]ffect the Court's analysis." *Id.*

Most courts have held vaccine refusal against defendants moving for compassionate release. *See United States v. Zambrano*, No. 18-CR-2002-CJW-MAR, 2021 U.S. Dist. LEXIS 12798, at *5 (N.D. Iowa Jan. 25, 2021) ("Although defendant has a right to refuse medical treatment, the Court finds that it would be inappropriate to reward her refusal to protect herself by granting her release. It would be paradoxical to endorse a system whereby a defendant could manufacture extraordinary and compelling circumstances for compassionate release by unreasonably refusing the health care afforded to them"); *United States v. Lohmeier*, No. 12 CR 1005, 2021 U.S. Dist. LEXIS 20562, at *3 (N.D. Ill. Feb. 3, 2021) ("[I]n refusing vaccination, [defendant] is contributing to any risk that remains and, in this Court's view, forfeits his claim that the remaining risk constitutes an extraordinary and compelling basis to reduce his sentence"); *United States v. Robinson*, Criminal No. 16-94, 2021 U.S. Dist. LEXIS 33822, at *2 (W.D. Pa. Feb. 23, 2021) (a defendant's vaccine refusal "significantly undermines the foundational premises of his Motion");

*United States v. Mascuzzio*, No. 16 Cr. 576 (JFK), 2021 U.S. Dist. LEXIS 39011, at *6-7 (S.D.N.Y. Mar. 2, 2021) (stating that the court would be "hard-pressed" to find defendant's health issues constituted "extraordinary and compelling reasons" warranting release in light of his refusal of an approved vaccine); *United States v. Graves*, No. 15-CR-509-5 (CS), 2021 U.S. Dist. LEXIS 47867, at *3-4 (S.D.N.Y. Mar. 15, 2021) (finding the defendant's vaccine refusal to be a factor in concluding there are no extraordinary and compelling circumstances justifying compassionate release); *United States v. Austin*, No. 15-20609, 2021 U.S. Dist. LEXIS 56340, at *5 (E.D. Mich. Mar. 25, 2021) (finding that defendant failed to establish his health conditions warranted compassionate release, noting that "[a] prisoner cannot on the one hand point to the risk of severe illness, while on the other hand refuse to participate in basic precautionary measures such as vaccination"); *United States v. Pruitt*, No. 3:14-CR-0384-B-1, 2021 U.S. Dist. LEXIS 63742, at *6 (N.D. Tex. Apr. 1, 2021) ("[Defendant] cannot refuse the vaccine to prevent against COVID-19 on the one hand and then argue for compassionate release because he faces an increased risk of severe illness or death should he contract COVID-19 on the other hand"). *But see United States v. Lum*, No. 18-cr-00073-DKW-1, 2021 U.S. Dist. LEXIS 21141, at *10 n.19 (D. Haw. Feb. 2, 2021) (declining to consider vaccine refusal as an "automatic, disqualifying factor" for compassionate release, noting that a defendant "desiring more information about the vaccine before consenting to its administration is understandable under the circumstances, including the newness of the vaccine, its

emergency approval by the FDA, and the number of ailments from which [defendant] suffers").[6]

The Court finds persuasive the logic of the many courts that have held vaccine refusal as a factor against an inmate who is petitioning for compassionate release based on the risk of contracting COVID-19. In his response, Mr. Greenlaw points to potential side effects from the vaccine. Citing the CDC, Mr. Greenlaw says as a result of the vaccine, he could get pain, redness and swelling in the arm that received the shot and tiredness, headache, muscle pain, chills, fever, and nausea in the rest of his body. *Def.'s Resp. to Vaccine Refusal Notice* at 1-2; *see Possible Side Effects After Getting a COVID-19 Vaccine*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/expect/after.html.

But Mr. Greenlaw's argument ignores the risks of not being vaccinated and the benefit of vaccination. In his own motion, Mr. Greenlaw describes the risk of contracting COVID-19 as being "severe illness," including "hospitalization, admission to the ICU, intubation or mechanical ventilation, or death." *Def.'s Am. Second Mot.* at 2; *see People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The potential side effects from the vaccination are trivial

---

[6] The District Court denied the inmate's motion for compassionate release on other grounds. *See Lum*, 2021 U.S. Dist. LEXIS 21141, at *11.
   In any event, the Court agrees with the District Court of Hawaii that vaccination refusal should not be an "automatic, disqualifying factor." Rather, an inmate's vaccination refusal—without more—should be considered a factor, among others, against granting a motion for compassionate release if the motion is based on an inmate's risk of contracting COVID-19 while in prison.

15

in comparison to the severe illness, including death, Mr. Greenlaw may endure if he contracts the virus.

Moreover, the same CDC that Mr. Greenlaw cites unequivocally recommends that people get vaccinated:

> COVID-19 vaccines are effective at protecting you from getting sick. Based on what we know about COVID-19 vaccines, people who have been fully vaccinated can start to do some things that they had stopped doing because of the pandemic.

*When You've Been Fully Vaccinated*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html. The CDC also says: "**We know** that COVID-19 vaccines are effective at preventing COVID-19 disease, especially severe illness and death." *Id.* (emphasis in original). The risk-benefit analysis in favor of inoculation is so overwhelming that the Court holds Mr. Greenlaw's refusal to be vaccinated against his motion for compassionate release.

In arriving at this conclusion, the Court stresses that it is not ordering Mr. Greenlaw to undergo a vaccination. Such an order would have constitutional implications. *See Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016); *Missouri v. McNeely*, 569 U.S. 141 (2013); *Sell v. United States*, 539 U.S. 166 (2003); *Schmerber v. California*, 384 U.S. 757 (1966); *United States v. Manubolu*, 478 F. Supp. 3d 32 (D. Me. 2020). Mr. Greenlaw has the right to refuse medical treatment, including a shot in the arm. *See United States v. Martin*, No. 1:05CR21, 2021 U.S. Dist. LEXIS 57421, at *5-6 (N.D. W. Va. Mar. 26, 2021). But in the pending motion, he bears the burden to demonstrate entitlement to compassionate release and he may not "reasonably expect that prolonging his risk by declining vaccination will be rewarded

16

with a sentence reduction." *Lohmeier*, 2021 U.S. Dist. LEXIS 20562, at *7. To reward Mr. Greenlaw for his vaccination refusal would create a perverse incentive for defendants like Mr. Greenlaw to refuse COVID-19 vaccines and put their lives and the lives of others in jeopardy in an effort to bolster their compassionate release motions. *United States v. Figueroa*, No. 2:09-cr-00194-KJM, 2021 U.S. Dist. LEXIS 56143, at *12 (E.D. Cal. Mar. 23, 2021) ("If defendants could buttress their motions for compassionate release by refusing a safe and effective vaccine, they would be operating on an unfairly perverse incentive.  In the worst case scenario, this incentive might lead a person to unreasonably refuse necessary and readily available medical treatment in an effort to create 'extraordinary and compelling' circumstances when none exist").

Although the Court finds Mr. Greenlaw's vaccination refusal is a factor against his release, even absent this factor, the Court would dismiss his motion because Mr. Greenlaw failed to show any changed circumstances that warrant his early release. *See United States v. Newton*, No. 1:17-cr-00073-JAW-1, 2021 U.S. Dist. LEXIS 48042, at *24 (D. Me. Mar. 15, 2021) (declining to rest the Court's decision on vaccine refusal because defendant's motion was "plainly otherwise non-meritorious").

### E.     Summary

Mr. Greenlaw has not carried his burden of proving entitlement to compassionate release.  Just six months ago the Court dismissed Mr. Greenlaw's motion for compassionate release, and there have been no significant developments to change the Court's determination.  While his medical conditions may heighten his

17

risk from COVID-19, the Court continues to find that releasing Mr. Greenlaw early would endanger the community and contravene the § 3553(a) factors. On the record before the Court, he does not qualify for compassionate release under 18 U.S.C. § 3582(c).

## V.   CONCLUSION

The Court DISMISSES without prejudice Malcolm Greenlaw's Amended Petition for Compassionate Release (ECF No. 411).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 6th day of April, 2021